U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 19, 2008** **United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | |
| **MANCHESTER, INC.** | § | **Case No. 08-30703-11-BJH** |
| | § | |
| **Debtor.** | § | |
| | § | |
| **MANCHESTER INC., NICE CARS OPERATIONS ACQUISITION CO., INC., AND NICE CARS ACCEPTANCE ACQUISITION CO., INC.** | § | |
| | § | |
| **Plaintiffs,** | § | **Adversary No. 08-03163-BJH** |
| **v.** | § | |
| | § | |
| **RAY LYLE AND VICTORIA LYLE,** | § | |
| | § | |
| **Defendants.** | § | |

---

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion of Ray and Victoria Lyle to Withdraw Their Proofs of Claim

(the "Withdrawal of Claim Motion")[1] and the Litigation Trustee's response in opposition to the Withdrawal of Claim Motion (the "Response").[2] The Court has core jurisdiction over the issues raised in the Withdrawal of Claim Motion in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## I. FACTUAL BACKGROUND

### A. Pre-Adversary Proceeding Procedural Context

On or about October 4, 2006, Manchester, Inc. ("Manchester") and Ray and Victoria Lyle (collectively, the "Lyles") agreed that Manchester would acquire the Lyles' "buy-here-pay-here" used car business called Nice Cars, Inc. ("Nice Cars"). This acquisition was formalized pursuant to two nearly identical share purchase and exchange agreements (the "Purchase Agreements"), pursuant to which Manchester agreed to (i) pay the Lyles, among other things, $17,820,000 in cash at closing and $6,930,000 through the execution of a promissory note, and (ii) issue the Lyles approximately $25 million in restricted Manchester stock. Manchester also entered into employment agreements with the Lyles, which called for a combined salary to them of $587,584 per year for five years (the "Employment Agreements"). The total consideration called for in the Purchase Agreements and the Employment Agreements was approximately $50 million.

---

[1]The Withdrawal of Claim Motion is part of Ray and Victoria Lyle's Motion to Withdraw the Reference to the Bankruptcy Court, to Withdraw Their Proofs of Claim, and to Dismiss or Transfer this Proceeding and Brief In Support (the "Motion"). At the status conference on the Motion held on November 3, 2008, the parties agreed that this Court has the authority to hear and finally determine the Withdrawal of Claim Motion – *i.e.*, that portion of the Motion dealing with the withdrawal of the Lyles' proofs of claim. The Court will issue a separate report and recommendation to the United States District Court for the Northern District of Texas on that portion of the Motion dealing with the requested withdrawal of the reference.

[2]The Response is part of the Litigation Trustee's response to the Motion.

On October 5, 2007, Manchester commenced an action against the Lyles in federal district court in New York (the "New York Action"),[3] alleging breach of the Purchase Agreements as well as several common law claims, including fraud. Manchester sought monetary damages exceeding $50 million and contended that the Lyles made false and misleading misrepresentations to Manchester regarding the financial condition of Nice Cars in the Purchase Agreements. Manchester filed an amended complaint in the New York Action on October 12, 2007, and then amended its complaint again on November 30, 2007 to include additional New York state law-based claims including rescission, constructive trust, indemnification, conversion, tortious interference with contract, replevin, breach of fiduciary duty, breach of the Purchase Agreements and the Employment Agreements, and breach of an alleged settlement agreement. Manchester also filed a jury demand.

On January 18, 2008, the Lyles moved to dismiss Manchester's then-pending complaint in its entirety for its alleged failure to state a claim against the Lyles.

On February 17, 2008 (the "Petition Date"), Manchester filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above Chapter 11 case (the "Case").[4] Shortly thereafter, on February 28, 2008, Manchester requested, and the Lyles agreed to, a 45-day extension of time for Manchester to respond to the Lyles' motion to dismiss in the New York Action.

On April 7, 2008, Richard Gaines ("Gaines"), Manchester's Chief Executive Officer, purported to enter into a settlement agreement (the "Purported Settlement Agreement") with the

---

[3]The Purchase Agreements contained an exclusive forum selection clause providing that all claims arising from the Purchase Agreements were to be brought in federal district court in New York applying New York law.

[4]Various Manchester affiliates filed their Chapter 11 cases simultaneously. Those cases were administratively consolidated with the Case.

Lyles, pursuant to which, among other things, Manchester would dismiss its claims against the Lyles in the New York Action with prejudice and allow the Lyles' claims in the Case in the amount of $9,000,000. On April 24, 2008, after Gaines consulted with Manchester's bankruptcy counsel, the Lyles were advised that the Purported Settlement Agreement was rescinded (because Gaines did not have the authority to enter into that agreement without bankruptcy court approval and that Manchester would not seek such approval).

On April 17, 2008, Manchester filed the Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), along with a joint plan of reorganization under Chapter 11 for Manchester and its various affiliate debtors (the "Plan"). The Lyles objected to the Disclosure Statement and, on April 29, 2008, filed a proof of claim against Manchester in the amount of approximately $9 million. This proof of claim was subsequently amended on both April 30 and June 11, 2008 (the "Proofs of Claim").[5] As amended, the Proofs of Claim seek to recover approximately $33.4 million allegedly remaining unpaid under the Purchase Agreements and the Employment Agreements.

On June 12, 2008, this Court confirmed the Plan, as modified (the "Confirmed Plan"). Pursuant to the Confirmed Plan, Manchester's claims against the Lyles were transferred to a litigation trust to be pursued for the benefit of Manchester's creditors, many of whose claims were also transferred to the litigation trust. On June 23, 2008, Alex D. Moglia was appointed as the trustee of the litigation trust (the "Litigation Trustee") pursuant to the terms of the Confirmed Plan.

---

[5] The Lyles' initial proof of claim, filed on April 29, 2008, was in the amount of $9,917,648. The Lyles amended their initial proof of claim on April 30, 2008 for a reduced amount totaling $7,654,327. The Lyles' final amended proof of claim was filed on June 11, 2008 in the amount of $33,431,043.

**B. Post-Adversary Proceeding Procedural Context**

On or about June 17, 2008, Manchester voluntarily dismissed the New York Action and, together with certain affiliates, initiated adversary proceeding no. 08-03163-BJH (the "Adversary Proceeding") against the Lyles. In the Adversary Proceeding, Manchester seeks to recover the same monetary damages arising from its purchase of Nice Cars that were previously sought in the New York Action. Manchester's adversary complaint here (the "Adversary Complaint") seeks relief on eight counts: (1) breach of the Nice Cars Agreement, (2) breach of the Nice Cars Acceptance Agreement, (3) avoidance and recovery of fraudulent transfers under 11 U.S.C. § 548, (4) avoidance and recovery of various fraudulent transfers under 11 U.S.C. § 544(a) and New York state fraudulent transfer laws, (5) avoidance and recovery of various preferential transfers under 11 U.S.C. § 547(b), (6) subordination of claims under 11 U.S.C. § 510(b), (7) subordination of claims under 11 U.S.C. § 510(c), and (8) disallowance of claims under 11 U.S.C. § 502(d). Adversary Complaint, at pp. 14-24.

On September 11, 2008, the Lyles filed a Motion for Withdrawal of the Reference, which was subsequently amended and re-filed on September 15, 2008 as the Motion – *i.e.*, the Motion to Withdraw the Reference, combined with Motions to Withdraw Proofs of Claim and Dismiss or Transfer the Adversary Proceeding to a federal district court in New York pursuant to the forum selection clause contained in the Purchase Agreements. The Lyles sought a withdrawal of the reference of the Adversary Proceeding because, among other things and according to the Lyles, Manchester's claims in the Adversary Proceeding were non-core and they were entitled to a jury trial on those claims, despite having filed the Proofs of Claim in the Case. Motion, pp. 12-19. In addition, the Lyles sought to withdraw the Proofs of Claim, if such withdrawal was necessary in order that the

reference be withdrawn.[6] *Id*. at 19-20. Finally, based upon a forum selection clause in the Purchase Agreements, the Lyles sought dismissal of the Adversary Proceeding or, in the alternative, a transfer of the Adversary Proceeding to a federal district court in New York. *Id*. at 20-22.

On October 1, 2008, the Litigation Trustee substituted in as the proper plaintiff in the Adversary Proceeding in accordance with the terms of the Confirmed Plan. The Litigation Trustee opposes a withdrawal of the Proofs of Claim to the extent such withdrawal facilitates the balance of the Motion. In other words, to the extent the withdrawal of the Proofs of Claim reinstates the Lyles' right to a jury trial on some (or all) of the claims pending against them in the Adversary Proceeding, or otherwise facilitates a withdrawal of the reference of the Adversary Proceeding or its dismissal or transfer pursuant to the forum selection clause in the Purchase Agreements, the Litigation Trustee opposes the withdrawal of the Proofs of Claim.[7]

## II. LEGAL ANALYSIS

### A. Withdrawal of a Proof of Claim – The Relevant Standard

Under Federal Rule of Bankruptcy Procedure 3006, "if after a creditor has filed a proof of claim . . . a complaint is filed against that creditor in an adversary proceeding . . . the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee . . . ." Fed.

---

[6]The Court found the conditional nature of the Lyles' request troubling, concluding that the Lyles were asking for an advisory ruling. In other words, as pled in the Motion, the Lyles were only prepared to seek a withdrawal of the Proofs of Claim if the Court told them that was necessary to insure that the reference would be withdrawn. From this Court's perspective, it cannot be placed in the position of giving advisory rulings on what will or won't be helpful to other portions of a litigant's case. Accordingly, the Court requested that they Lyles commit – did they wish to withdraw their claims (without strings attached) or not. The Lyles then advised the Court that they wished to unconditionally withdraw the Proofs of Claim.

[7]Similarly, the Litigation Trustee attempted to "hedge his bets" by opposing withdrawal of the Proofs of Claim to the extent he didn't like the potential legal effect of that withdrawal on the claims pled in the Adversary Complaint. For the same reasons discussed in n.6, *supra*, the Court will consider the Withdrawal of Claim Motion to be opposed by the Litigation Trustee.

R. Bankr. P. 3006. A motion to withdraw a proof of claim is frequently analogized to a motion to withdraw a complaint under Federal Rule of Civil Procedure 41(a). *See, e.g., In re 20/20 Sport, Inc.*, 200 B.R. 972, 979-980 (Bankr. S.D.N.Y. 1996)(citing to the Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3006, which stated that Fed. R. Civ. P. 41(a) analysis should apply to a motion to withdraw a proof of claim).

In determining whether withdrawal of a proof of claim is appropriate, courts consider the following factors: (1) the movant's diligence in bringing the motion, (2) any "undue vexatiousness" on the part of the movant, (3) the extent to which the suit has progressed, including the effort and expense undertaken by the non-moving party to prepare for trial, (4) the duplicative expense of re-litigation, and (5) the adequacy of the movant's explanation for the need to withdraw the claim. *In re Ogden N.Y. Servs., Inc.*, 312 B.R. 729, 732 (Bankr. S.D. N.Y. 2004) (citing *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990), *cert. denied*, 498 U.S. 899 (1990)(involving a motion for voluntary dismissal under F.R.C.P. 41(a)(2)); *In re Wotkyns*, 274 B.R. 690, 693-94 (Bankr. S.D. Tex. 2002)(applying the Second Circuit's five-part *Zagano* test.).[8] As with a Rule 41(a)(2) motion, a motion to withdraw a proof of claim is left to the bankruptcy court's discretion, which is "to be exercised with due regard to the legitimate interests of both [parties]." *In re 20/20 Sport*, 200 B.R. at 979. However, since the general policy under Rule 41(a) is to permit withdrawal of a complaint, withdrawal of a proof of claim should be permitted unless that withdrawal results in a "legal harm" or "prejudice" to a non-moving party. *In re Armstrong*, 215 B.R. 730, 732 (Bankr. E.D. Ark. 1997).

---

[8]The *Wotkyns* court noted that the Sixth, Seventh, and Eighth Circuits utilize a similar four-part test to determine whether dismissal is appropriate under Fed. R. Civ. P. 41(a). This test focuses on: (1) the defendant's effort and expense in preparing for trial, (2) any excessive delay or lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficiencies in the plaintiff's explanation of the need for a dismissal of the complaint, and (4) whether a summary judgment motion has been filed by the defendant. *In re Wotkyns*, 274 B.R. at 693.

The non-moving party bears the burden to prove that it will suffer such a legal harm or prejudice. *In re County of Orange*, 203 B.R. 977, 982 (Bankr. C.D. Cal. 1996); *In re Armstrong*, 215 B.R. at 732. *See also In re Lowenschuus*, 67 F.3d 1394, 1399 (9th Cir. 1995), *cert. denied*, 116 S. Ct. 2497 (1996)(finding that denial of a Fed. R. Bankr. P. 3006 motion requires a showing of legal prejudice by the non-moving party).

**B. Applying This Standard Here**

The Litigation Trustee identifies several reasons why he believes the Lyles are not entitled to withdraw the Proofs of Claim including: (1) their active participation in the Case, (2) improper forum shopping, (3) the absence of adequate justification for seeking the withdrawal, and (4) the waste and inefficiency that could occur were the Litigation Trustee forced to "litigate his claims in two separate forums." Response, at pp. 14-15. Only one of these reasons – *i.e.*, the absence of adequate justification for seeking the withdrawal, is directly relevant to the *Zagano* factors discussed above. The other reasons advanced by the Litigation Trustee are relevant to the balance of the Motion – *i.e.*, the Lyles' request for a withdrawal of the reference and/or dismissal or transfer of the Adversary Proceeding to New York. Accordingly, the Court will address those issues in its report and recommendation to the District Court, not here.[9]

As relevant here, and as previously noted, the Litigation Trustee bears the burden to demonstrate a legal harm or prejudice resulting to him from withdrawal of the Proofs of Claim before this Court may deny the Withdrawal of Claim Motion. *In re Ogden*, 312 B.R. at 732; *In re County of Orange*, 203 B.R. at 982. And, in order to show such legal harm or prejudice, the Litigation Trustee

[9] *See* Report and Recommendation on Motion to Withdraw Reference entered concurrently with this Memorandum Opinion and Order (the "Report and Recommendation").

must demonstrate that the Lyles' attempted withdrawal violates the five-part *Zagano* test; namely that (1) the Lyles were not diligent in bringing the Withdrawal of Claim Motion, (2) the Lyles engaged in undue vexatiousness in bringing the Withdrawal of Claim Motion, (3) the Adversary Proceeding has already progressed too far and the Litigation Trustee has expended too much effort and expense to allow withdrawal of the Proofs of Claim, (4) there could be undue duplicative expense related to re-litigation, and (5) the Lyles' explanation for seeking withdrawal is inadequate, to which we now turn. *Zagano*, 900 F.2d at 14.

**1. Diligence**

As noted previously, the Lyles filed their initial proof of claim on April 29, 2008, and amended it on April 30 and June 11, 2008. The Withdrawal of Claim Motion was filed on September 15, 2008, about four and one-half months after the initial proof of claim was filed.

In *In re Ogden*, the district court found that the creditor satisfied that *Zagano* diligence requirement, even though the creditor waited over a year after filing its proof of claim before attempting to withdraw it. *In re Ogden*, 312 B.R. at 733. The court was influenced by the fact that no discovery had taken place as to the proof of claim or the adversary proceeding at the time the creditor sought withdrawal. *Id.*; *see also Avant v. Forest Oil Co.*, 2000 U.S. Dist. LEXIS 181, *3-5 ( E.D. La. January 10, 2000)(finding that a lack of proper diligence could be demonstrated by showing that "extensive discovery" had already occurred, in addition to the submission of witness and exhibits lists to the court).

Here, the Adversary Proceeding is in its infancy. The Lyles were only served with proper process on August 13, 2008, which prompted the Lyles' filing of the Motion, including the

Withdrawal of Claim Motion.[10] The Lyles have not yet answered the Adversary Complaint. Moreover, the Litigation Trustee was substituted in as the proper plaintiff in the Adversary Proceeding on October 1, 2008. No discovery has been undertaken regarding either the Proofs of Claim or any of the other claims asserted in the Adversary Proceeding.

Given the early stage of this litigation, the Lyles were clearly diligent in bringing the Withdrawal of Claim Motion.

**2. Undue Vexatiousness**

Although "vexatiousness" is rarely discussed, much less defined, in the relevant case law, the Lyles' actions do not rise to any reasonable definition of the term.[11] The Withdrawal of Claim Motion, while obviously designed to provide the Lyles with a perceived tactical advantage, is clearly based upon more than a mere desire to "harass" the Litigation Trustee. Withdrawal of the Proofs of Claim will not deprive the Litigation Trustee of his ability to continue to prosecute the Adversary Proceeding and his claims against the Lyles. In fact, withdrawal of the Proofs of Claim will simplify the litigation by essentially granting the Litigation Trustee the substantive relief requested in Counts VI-VIII of the Adversary Complaint – *i.e.*, subordination of the Proofs of Claim to other creditor's claims is not required if the claims are withdrawn and disallowance of the Proofs of Claim is also unnecessary if they are withdrawn. Furthermore, withdrawal of the Proofs of Claim does not affect the administration of the Case. The Case is essentially concluded, as the Confirmed Plan has been

[10] Two previous summonses were issued. The first summons was dated June 18, 2008, but was apparently never served. The second summons was dated July 9, 2008, but was served on the Lyles without the Adversary Complaint.

[11] Merriam-Webster's Online Directory defines vexatiousness as "intending to harass." *See* http://www.merriam-webster.com/dictionary/vexatiousness.

substantially consummated. *See* Memorandum Opinion and Order entered in Case No. 08-30703 on June 23, 2008, Docket No. 325.

**3. Progress in the Adversary Proceeding**

As noted previously, the Adversary Proceeding is in its infancy. Manchester filed the Adversary Proceeding approximately six months ago, the Lyles were properly served with the Adversary Complaint approximately four months ago, the Litigation Trustee substituted in as plaintiff approximately two and one-half months ago, and no discovery has been taken. Neither Manchester nor the Litigation Trustee has incurred significant expense to date.

**4. Duplicative Re-Litigation Costs**

Because the Adversary Proceeding is still in its infancy, there is little risk of duplicative re-ligation and the costs associated with such re-litigation.

**5. Adequacy of the Lyles' Explanation**

The Lyles want a jury trial on the claims asserted against them in the Adversary Proceeding. They have been candid about this. Although the Lyles obviously perceive a tactical advantage in having a jury trial, absent a showing of "substantial prejudice" by the Litigation Trustee, the "mere fact that a tactical advantage will result is insufficient grounds for denial of the motion."[12] *In re 20/20 Sport, Inc.*, 200 B.R. at 980.

The Litigation Trustee has failed to demonstrate sufficient legal harm or prejudice to him from the granting of the Withdrawal of Claim Motion. Accordingly, the Lyles' explanation for the withdrawal of the Proofs of Claim is adequate.

---

[12]In the Report and Recommendation, this Court concludes that the withdrawal of the Proofs of Claim does not restore any right to a jury trial the Lyles may have otherwise enjoyed with respect to the claims pled in the Adversary Complaint. *See* Report and Recommendation, at pp.16-19.

## III. CONCLUSION

The Litigation Trustee failed to provide this Court with sufficient evidence that he will suffer legal harm or prejudice should withdrawal of the Proofs of Claim be allowed. Accordingly, the Withdrawal of Claim Motion is hereby granted.

**SO ORDERED.**

**### End of Memorandum Opinion and Order ###**