

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

Signed June 1, 2009            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| MANCHESTER, INC. | § § | Case No. 08-30703-11-BJH |
| Debtor. | § § § | |
| MANCHESTER INC., NICE CARS OPERATIONS ACQUISITION CO., INC., AND NICE CARS ACCEPTANCE ACQUISITION CO., INC. | § § § § § § | |
| Plaintiffs, | § | Adversary No. 08-03163-BJH |
| v. | § § § | |
| RAY LYLE AND VICTORIA LYLE, | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Withdraw the Reference to the Bankruptcy Court, to

**Memorandum Opinion and Order**

Withdraw Their Proofs of Claim, and to Dismiss or Transfer This Proceeding and Brief in Support (the "Motion") filed by Ray and Victoria Lyle (collectively, the "Lyles"), and the Litigation Trustee's response in opposition to the Motion (the "Response"). Pursuant to Rule 5011.1 of the Local Rules for the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), this Court held a status conference with the parties on November 3, 2008.

On December 19, 2008, this Court issued a Memorandum Opinion and Order allowing the withdrawal of the Lyles' Proofs of Claim,[1] and a separate Report and Recommendation to the District Court recommending that the reference to the bankruptcy court not be withdrawn (the "Withdrawal of Reference Opinion"). On April 24, 2009, the District Court signed its Order Accepting Report and Recommendation of United States Bankruptcy Judge and ordered that the reference of this adversary proceeding not be withdrawn. Thus, this Court must now proceed to determine the final portion of the Motion – *i.e.*, the Lyles' request to dismiss or transfer this adversary proceeding to the Southern District of New York pursuant to a forum selection clause in the parties' contracts.

I.  **FACTUAL BACKGROUND**

    A.  **History Prior to the Filing of the Adversary Proceeding**

The adversary proceeding now pending before this Court had its genesis several years ago. On or about October 4, 2006, Manchester, Inc. ("Manchester") and the Lyles agreed that Manchester would acquire the Lyles' "buy-here-pay-here" used car business called Nice Cars, Inc. ("Nice Cars").

---

[1] At the November 3, 2008 status conference, the parties agreed that this Court had the authority to hear and determine the portion of the Motion dealing with the Lyles' request to withdraw their proofs of claim. In other words, the parties agreed that the issues surrounding the Lyles' request to withdraw their proofs of claim were "core" bankruptcy issues that this Court is statutorily authorized to finally determine in accordance with 28 U.S.C. § 157(b)(1) & (2).

**Memorandum Opinion and Order**                                       **Page 2**

This acquisition was formalized pursuant to two nearly identical share purchase and exchange agreements (the "Purchase Agreements"), pursuant to which Manchester agreed to: (i) pay the Lyles, among other things, $17,820,000 in cash at closing, (ii) pay another $6,930,000 through the execution of a promissory note, and (iii) issue the Lyles approximately $25 million in restricted Manchester stock. Manchester also entered into employment agreements with the Lyles, which called for collective payments to them of $587,584 per year for five years (the "Employment Agreements"). The total consideration called for in the Purchase Agreements and the Employment Agreements was approximately $50 million. Of particular relevance here, the Purchase Agreements contained an exclusive forum selection clause providing that all claims arising from the Purchase Agreements were to be brought in a federal or state court in New York applying New York law. Specifically, the Purchase Agreement stated:

> (b) Choice of Law. This Agreement shall be governed, construed and enforced in accordance with the laws of the State of New York and the federal laws of United States applicable therein, without giving effect to principles of conflicts of law.
> (c) Jurisdiction. The parties hereby irrevocably consent to the in personam jurisdiction of the state or federal courts located in the State of New York, in connection with any action or proceeding arising out of or relating to this Agreement or the transactions and the relationships established thereunder. The parties hereby agree that such courts shall be the venue and exclusive and proper forum in which to adjudicate such matters and that they will not contest or challenge the jurisdiction or venue of these courts.

Purchase Agreement, at 27.

On October 5, 2007, Manchester commenced an action against the Lyles in federal district court in the Southern District of New York (the "New York Action") alleging breach of the Purchase Agreements as well as several common law claims, including fraud. Manchester sought monetary damages exceeding $50 million and contended that the Lyles made false and misleading misrepresentations to Manchester regarding the financial condition of Nice Cars in the Purchase

Agreements. Manchester filed an amended complaint in the New York Action on October 12, 2007, and then amended its complaint again on November 30, 2007 to include additional New York state law-based claims including rescission, constructive trust, indemnification, conversion, tortious interference with contract, replevin, breach of fiduciary duty, breach of the Purchase Agreements and the Employment Agreements, and breach of an alleged settlement agreement. Manchester demanded a jury trial on its claims against the Lyles.

On January 18, 2008, the Lyles moved to dismiss Manchester's then pending complaint in the New York Action for its alleged failure to state a claim against the Lyles. Although never filed, the Lyles also claim to have intended to assert counterclaims against Manchester in the New York Action in the approximate amount of $25 million for, among other things, breaches of the Purchase Agreements and the Employment Agreements, common law fraud, and defamation.

On February 17, 2008 (the "Petition Date"), Manchester filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above Chapter 11 case (the "Case").[2] Shortly thereafter, on February 28, 2008, Manchester requested, and the Lyles agreed to, a 45-day extension of time by which Manchester would respond to the Lyles' motion to dismiss the New York Action.

On April 7, 2008, Richard D. Gaines ("Gaines"), Manchester's Chief Executive Officer, purported to enter into a settlement agreement (the "Purported Settlement Agreement") with the Lyles, pursuant to which, among other things, Manchester would dismiss its claims against the Lyles in the New York Action with prejudice and allow the Lyles' claims in the Case in the amount of $9

---

[2] Various Manchester affiliates filed their Chapter 11 cases simultaneously. Those cases were administratively consolidated with the Case.

**Memorandum Opinion and Order** **Page 4**

million. On April 16, 2008, Manchester requested, and the Lyles agreed to, a further 60-day extension of time for Manchester to respond to the Lyle's motion to dismiss the New York Action so that the parties could obtain approval of the Purported Settlement Agreement from this Court. However, on April 24, 2008, after Gaines consulted with Manchester's bankruptcy counsel, the Lyles were advised that the Purported Settlement Agreement was rescinded (because Gaines did not have the authority to enter into that agreement without bankruptcy court approval and Manchester would not seek such approval).

On April 17, 2008, Manchester filed the Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), along with a joint plan of reorganization under Chapter 11 for Manchester and its various affiliate debtors (the "Plan"). The Lyles objected to the Disclosure Statement and, on April 29, 2008, filed a proof of claim against Manchester in the amount of $9,917,648. This initial proof of claim was subsequently amended on April 30, 2008 to reduce the claim to $7,654,327. The Lyles' final amended proof of claim was filed on June 11, 2008 and, as amended, sought to recover $33,431,043 from the Manchester bankruptcy estate, the amount allegedly remaining unpaid under the Purchase Agreements and the Employment Agreements (the Lyles' initial claim, the amended claim, and the final amended claim shall be collectively referred to herein as the "Proofs of Claim").

On June 12, 2008, this Court confirmed the Plan, as modified (the "Confirmed Plan"). Pursuant to the Confirmed Plan, Manchester's claims against the Lyles were transferred to a litigation trust to be created pursuant to the terms of the Confirmed Plan (the "Litigation Trust"), which claims were to be pursued for the benefit of Manchester's creditors, many of whose claims were also transferred to the Litigation Trust. On June 23, 2008, Alex D. Moglia ("Moglia") was appointed as

the trustee of the Litigation Trust (the "Litigation Trustee") pursuant to the terms of the Confirmed Plan.

### B. History After the Filing of the Adversary Proceeding

On or about June 17, 2008, Manchester voluntarily dismissed the New York Action and, together with certain affiliates, initiated the above adversary proceeding No. 08-03163-BJH (the "Adversary Proceeding") against the Lyles. In the Adversary Proceeding, Manchester seeks to recover the same monetary damages allegedly arising from its purchase of Nice Cars that were previously sought in the New York Action. Manchester's adversary complaint here (the "Adversary Complaint") seeks relief on eight counts: (1) breach of the Nice Cars Agreement, (2) breach of the Nice Cars Acceptance Agreement, (3) avoidance and recovery of fraudulent transfers under 11 U.S.C. § 548, (4) avoidance and recovery of fraudulent transfers under 11 U.S.C. § 544(a) and New York state fraudulent transfer law, (5) avoidance and recovery of preferential transfers under 11 U.S.C. § 547(b), (6) subordination of claims under 11 U.S.C. § 510(b), (7) subordination of claims under 11 U.S.C. § 510(c), and (8) disallowance of claims under 11 U.S.C. § 502(d). Adversary Complaint, at pp. 14-24.

On September 11, 2008, the Lyles filed a Motion for Withdrawal of the Reference, which was subsequently amended and re-filed on September 15, 2008 as the Motion – *i.e.*, the Motion to Withdraw the Reference, combined with Motions to Withdraw Proofs of Claim and Dismiss or Transfer the Adversary Proceeding. Based upon a forum selection clause in the Purchase Agreements, the Lyles seek a dismissal of the Adversary Proceeding or, in the alternative, a transfer of the Adversary Proceeding to a federal district court in the Southern District of New York. *Id*. at 20-22.

On October 1, 2008, the Litigation Trustee substituted in as the proper plaintiff in the Adversary Proceeding in accordance with the terms of the Confirmed Plan. The Litigation Trustee opposes a dismissal or transfer of the Adversary Proceeding.

As previously noted, on December 19, 2008, this Court issued the Withdrawal of Reference Opinion in which it recommended to the District Court that the reference not be withdrawn. The District Court accepted that recommendation by Order entered on April 24, 2009. This Memorandum Opinion and Order addresses the final unresolved portion of the Motion – *i.e.*, the Lyles' request that the Adversary Proceeding be dismissed or, in the alternative, transferred to the Southern District of New York.

## II. LEGAL ANALYSIS

### A. Relevant Law

#### 1. Proper Venue of an Adversary Proceeding

28 U.S.C. § 1409(a) states that, except as otherwise provided, "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." In turn, 28 U.S.C. § 1412 provides that "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for convenience of the parties." Finally, Federal Rule of Bankruptcy Procedure 7087 provides that upon motion, and after a hearing, a bankruptcy court "may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412."

In the Motion, however, the Lyles seek to transfer the Adversary Proceeding to the Southern District of New York pursuant to 28 U.S.C. §§ 1404 or 1406, the general venue transfer provisions of the United States Code. The Lyles presumably do so given their contention that the issues raised

in the Adversary Proceeding are non-core, related-to proceedings, which some courts have concluded are then beyond the scope of 28 U.S.C. § 1412 and are more appropriately addressed under §§ 1404 or 1406. *See, e.g.*, *Searcy v. Knostman*, 155 B.R. 699, 706 (S.D. Miss. 1993); *Murray, Wilson & Hunter v. Jersey Boats, Inc., et al.*, No. 91-7733, 1992 WL 37516, at *3 (E.D. Pa. Feb. 21, 1992); *Goldberg Holding Corp. v. NEP Prod., Inc.*, 93 B.R. 33 (S.D.N.Y. 1988); *In re Thomson McKinnon Sec., Inc.*, 126 B.R. 833, 834-35 (Bankr. S.D.N.Y. 1991). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. In turn, § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

For the reasons detailed in the Withdrawal of Reference Opinion, this Court has previously concluded that all of the claims pled in the Adversary Proceeding are core claims. *See* Withdrawal of Reference Opinion, pp. 8-12. Accordingly, the relevant venue transfer statute is 28 U.S.C. § 1412 and Bankruptcy Rule 7087, not §§ 1404 or 1406. Because it is clear that the Lyles wish to have the Adversary Proceeding transferred to the Southern District of New York, the Court will proceed to analyze the transfer request under 28 U.S.C. § 1412 and Bankruptcy Rule 7087.[3]

Accordingly, pursuant to 28 U.S.C. § 1409(a), venue of an adversary proceeding is presumed

---

[3] However, even if the transfer request is analyzed under 28 U.S.C. § 1404(a), the Court would come to the same conclusion it comes to herein – *i.e.*, that transfer to the Southern District of New York is appropriate. As discussed in more detail in the Withdrawal of Reference Opinion and hereinafter in this Memorandum Opinion and Order, the controlling claims pled in the Adversary Proceeding were pending in the New York Action when Manchester filed the Case here. Manchester then strategically dismissed the New York Action and filed the Adversary Proceeding here. Clearly, Manchester believed the Southern District of New York to be both a proper and appropriate venue when the New York Action was originally commenced.

**Memorandum Opinion and Order** **Page 8**

proper in the district where the debtor filed its bankruptcy case, and a party challenging venue bears the burden of proving improper venue by a preponderance of the evidence. *In re Cole*, 2008 Bankr. LEXIS 2038, at *8-9 (Bankr. N.D. Tex. July 21, 2008); *In re Conmaco/Rector, L.P.*, 348 B.R. 362, 367 (Bankr. E.D. La. 2005)(citing *In re Peachtree Lane Assocs.*, 150 F.3d 788, 792 (7th Cir. 1998) (addressing venue of a bankruptcy case under 28 U.S.C. § 1408(1)). Moreover, even if venue is deemed proper, a court may transfer an adversary proceeding to another bankruptcy court pursuant to 28 U.S.C. § 1412 if such transfer is deemed to be "in the interest of justice or for the convenience of the parties." *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-04693, 2008 WL 425638, at * 2 (N.D. Cal. Feb. 14, 2008); *In re JWP, Inc.*, Adv. No. 94-82, 1994 Bankr. Lexis 1144, at * 5-6 (M.D. Fla. June 29, 1994).[4]

### 2. Enforcement of Forum Selection Clauses in General

According to the Fifth Circuit, a "forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). *See also Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998). Unreasonableness exists where: (1) the agreement to the forum selection clause involved fraud or overreaching; (2) the complaining party will be effectively deprived of its day in court because of the grave inconvenience or unfairness of the

---

[4] In deciding to transfer an adversary proceeding pending before it, the court in *In re JWP, Inc.*, relied upon *In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239 (5th Cir. 1979), in which the Fifth Circuit considered the following factors in deciding the "convenience of the parties" transfer issue in the context of a requested transfer of a bankruptcy case: (1) proximity of creditors of every kind to the Court, (2) the proximity of the debtor to the Court, (3) the proximity of the witnesses necessary to the administration of the estate, (4) the location of the assets, (5) the economic administration of the estate, and (6) the necessity for ancillary administration if liquidation should result. However, as will be discussed *infra*, full elaboration upon these factors is not required here due to the presence of a valid forum selection clause in the Purchase Agreements.

selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the enforcement would contravene a strong public policy of the forum in which the plaintiff has brought suit. *Haynsworth v. The Corp.,* 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)); *In re Millennium Studios*, *Inc.*, 286 B.R. 300, 306 (D. Md. 2002). *See also Klinghoffer v. Mama Fu's Noodle House, Inc.*, No. 3-04-CV-1695-L, 2004 WL 2583632, at *3 (N.D. Tex. Nov. 12, 2004) (quoting *M/S Bremen*, 407 U.S. at 17). While *M/S Bremen* "was an admiralty case, set in an international context, its teachings are not limited to such cases. . . . lower federal courts have consistently applied *The* [sic] *Bremen* analysis to cases involving only domestic parties and causes of action other than admiralty." *Friedman v. World Transp., Inc.*, 636 F. Supp. 685, 689 (N.D. Ill. 1986)(citations omitted).

The burden of showing that trial in the selected forum would be inherently unfair is placed on the party bringing suit in a forum other than the one designated in the forum selection clause. *Haynsworth,* 121 F.3d at 963; *Kevlin Servs.,* 46 F.3d at 14; *Millenium Studios,* 286 B.R. at 306. Furthermore, the party seeking to avoid operation of the forum selection clause "should bear a heavy burden of proof" and demonstrate that "trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of [its] day in court." *M/S Bremen*, 407 U.S. at 17. *See also Afram Carriers,* 145 F.3d at 301; *Arrow Plumbing & Heating, Inc. v. N. Am. Mech. Servs.*, 810 F. Supp. 369, 372 (D. R.I. 1993).

Within a bankruptcy context, "the mere fact that Debtor/Plaintiff is in bankruptcy is not sufficient to prevent enforcement of a contractual forum selection clause." *In re Bailey*, 217 B.R. 523, 527 (Bankr. N.D. Tex. 1997) (citing *Arrow Plumbing,* 810 F. Supp. at 372). However, with

**Memorandum Opinion and Order** **Page 10**

respect to "core" bankruptcy matters, public policy favors the centralization of bankruptcy proceedings in the bankruptcy court where the debtor's bankruptcy case is pending. *In re D.E. Frey Group, Inc.*, 387 B.R. 799 (D. Colo. 2008). But, even in "core" matters, the language of 28 U.S.C. § 1334, which provides for bankruptcy jurisdiction, is permissive, not mandatory. *Id.* The *D.E. Frey Group* court analyzed the Supreme Court's *M/S Bremen* decision in a bankruptcy context, and stated:

> While there is a public policy consideration that *may* be impaired when core proceedings are transferred, the public policy consideration is only one factor and should not be given controlling weight in light of the permissive nature of bankruptcy jurisdiction. Moreover, in a case such as the one at bar – where the debtor was able to obtain confirmation of its reorganization plan long before the contract claims covered by the forum selection clause were tried to the court – any policy concern 'must be lessened.'

*D.E. Frey*, 387 B.R. at 807 (enforcing forum selection clause and transferring core proceeding to selected forum) (internal citations omitted); *In re Millenium Studios, Inc.*, 286 B.R. 300 (D. Md. 2002) (policy favoring centralization of bankruptcy proceedings in the court where the bankruptcy cases is pending was not strong enough to preclude enforcement of forum selection clause in action by chapter 11 debtor asserting breach of pre-petition contract). With respect to "non-core" matters, forum selection clauses are enforceable to the same extent that they are enforceable outside of bankruptcy. *In re Exide Techs.*, 544 F.3d 196, 218 n. 15 (3rd Cir. 2008) (stating that forum selection clauses will be enforced in bankruptcy as to non-core matters unless enforcement would violate strong public policy).

Finally, in an analogous context, and according to the Fifth Circuit, a bankruptcy court maintains the discretion to refuse to enforce an otherwise valid arbitration clause in a contract only

if: (1) the proceeding derives exclusively from the provisions of the Bankruptcy Code; and (2) arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code. *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002)(citing to the test articulated in *In re Nat'l Gypsum*, 118 F.3d 1056, 1067 (5th Cir. 1997)). Both prongs of this two-part test must be satisfied. *In re Martinez*, No. 06-34385, 2007 Bankr. LEXIS 1260, at *13 (Bankr. S.D. Tex. April 19, 2007). And, according to the *D.E. Frey* court, in terms of "determining whether to enforce a forum selection clause or an arbitration clause, 'there is little difference between the two,' and, accordingly, a motion to enforce a forum selection clause is 'analytically indistinguishable from a motion to stay an action at law pending arbitration.'" *In re D.E. Frey*, 387 B.R. at 806 (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)).

    **B.**    **Contentions of the Parties**

        **3.**    **The Lyles**

The Lyles argue that the forum selection clause, which requires that resolution of disputes between the parties be undertaken in a New York federal or state court applying New York law, should be enforced because the clause "did not involve fraud or overreaching." Motion, at 21-22. The Lyles further argue that the non-core nature of the Adversary Proceeding, coupled with confirmation of the Plan, overrides any concerns about the centralization of the bankruptcy process that might weigh against enforcement of the clause. Motion, at 22. Finally, the Lyles argue that the Litigation Trustee cannot satisfy his required burden of demonstrating that enforcement of the clause would be "unfair." Reply, at 9.

        **4.**    **Litigation Trustee**

In response, the Litigation Trustee contends that the forum selection clause should not be enforced because the Adversary Proceeding is core in nature and, as such, it would be "unreasonable" to require enforcement of the clause. Response, at 15-16. The Litigation Trustee also contends that the forum selection clause should not be enforced because neither "the Debtor or the Lyles have any connection to New York that would necessitate litigation there." Response, at 15. Finally, although argued in a different portion of the Response brief, the Litigation Trustee contends that since the Adversary Proceeding "is only one piece of litigation" that he intends to bring, judicial economy requires that this Court maintain jurisdiction and deny the motion to transfer. Response, at 4.[5]

### B.  Application of the Relevant Law Here

#### 1.  Forum Selection Clause Enforcement

Although this Court has found that the breach of contract claims pled in Count I and II of the adversary complaint are "core" due to the operation of 28 U.S.C. §157(b)(2)(c), these claims are "based on a pre-petition legal right that is not derived from any federal right conferred by the Bankruptcy Code." *In re Bailey*, 217 B.R. at 527.[6] And, although the fraudulent transfer and preference claims pled in Count III, IV, and V of the adversary proceeding are core claims that do

---

[5] This Court finds this argument unpersuasive and unduly speculative since, at the time it was made, no other litigation was on file. Moreover, until very recently, many months had passed and only one other adversary proceeding was commenced by the Litigation Trustee – *i.e.*, *Moglia v. Keith, et al*, 09-3027 – and, it is likely that the reference of that adversary proceeding will be withdrawn once it is trial ready, as one of the defendants has (i) sought a withdrawal of the reference, (ii) demanded a jury trial (and no one argues that he is not entitled to a jury trial), and (iii) not consented to a jury trial before this Court. A number of avoidance actions were commenced by the Litigation Trustee several days ago.

[6] Like the present case, *In re Bailey* involved a "debtor's breach of contract claim...that clearly could have existed outside of bankruptcy." *Id*. at 526.

**Memorandum Opinion and Order**                                                                                          **Page 13**

derive from the provisions of the Bankruptcy Code, those claims are not the heart of the Adversary Proceeding. Rather, what is truly at issue in the Adversary Proceeding are the Lyles' (i) alleged prepetition misrepresentations to Manchester regarding the financial condition and value of Nice Cars, and (ii) alleged prepetition breaches of the Purchase Agreements. Unless the Litigation Trustee prevails on his Count I and II breach of contract claims, it is unlikely that the Litigation Trustee could prevail on his Count III - V fraudulent transfer and preference claims. In other words, if the Lyles did not make any misrepresentations to Manchester about the financial condition and value of Nice Cars, it will be exceedingly difficult for the Litigation Trustee to recover the monies paid to the Lyles pursuant to the Purchase Agreements and the Employment Agreements as either fraudulent transfers or preferences. Moreover, if the Litigation Trustee prevails on his Count I and II breach of contract claims, he will likely obtain a judgment for the monies paid to the Lyles under contracts they have been found to have breached. In that event, avoidance and recovery of those same sums as either fraudulent transfers or preferences is superfluous. Accordingly, and in the words of the Fifth Circuit, the "underlying nature" of the Adversary Proceeding, does not "derive exclusively from the provisions of the Bankruptcy Code" and is in fact "derivative of the pre-petition legal . . . rights possessed by [the] debtor," *In re Gandy*, 299 F.3d at 495; *In re Nat'l Gypsum*, 118 F.3d at 1067, as evidenced by the fact that these breach of contract claims were pending prepetition in the New York Action.

Given that the heart of this dispute was pending in the New York Action at the time the Case was filed and remained pending there until several days after confirmation of the Plan (when Manchester voluntarily dismissed the New York Action and filed the Adversary Proceeding here), and given the fact that the Case was essentially concluded due to the substantial consummation of

the Confirmed Plan months ago,[7] the policy favoring the centralization of a "core" adversary proceeding with its underlying bankruptcy case is lessened here. *D.E. Frey*, 387 B.R. at 807. As such, the Litigation Trustee must meet the "heavy burden" of demonstrating that enforcement of the forum selection clause would be unreasonable under the four-factor test identified above. *M/S Bremen*, 407 U.S. at 17. For the reasons explained more fully below, the Litigation Trustee failed to meet this burden.

As for the first factor – *i.e.*, the agreement to the forum selection clause involved fraud or overreaching, the Litigation Trustee failed to offer any evidence tending to establish that the forum selection clause was procured through fraud or overreaching. It appears that the clause was freely negotiated between two knowledgeable parties in an arm's length transaction. Moreover, the fact that the forum selection clause was agreed upon by knowledgeable parties obviates the Litigation Trustee's assertion that "nothing" ties the respective parties to New York. While the parties may have few, if any, direct ties to New York, they chose to have all disputes settled before a New York court applying New York law.[8]

As for the second factor – *i.e.*, the Litigation Trustee will be effectively deprived of his day in court because of the grave inconvenience or unfairness of the selected forum, the Litigation Trustee failed to establish either that it is gravely inconvenient for him to litigate in New York or that he would be effectively deprived of his day in court due to the inherent unfairness of the selected

---

[7] *See* Order Denying Motion to Modify List of Rejected Executory Contracts signed on October 9, 2008 in the Case.

[8] Furthermore, any "presumption in favor of maintaining venue of an adversary proceeding in the forum where the bankruptcy case is pending....[is] significantly weakened, if not entirely destroyed, by the circumstance that this is now post-confirmation litigation." *In re Mirant*, 337 B.R. 107, 124 (N.D. Tex. 2006).

**Memorandum Opinion and Order**

forum. The Litigation Trustee lives in Chicago. It is as easy for him to travel to New York to litigate these claims as it is for him to travel to Dallas. In short, there is no reason that the Litigation Trustee cannot litigate these claims in New York, as Manchester agreed in the Purchase Agreements.

As for the third factor – *i.e.*, the fundamental unfairness of the chosen law may deprive the Litigation Trustee of a remedy, the Litigation Trustee failed to offer any evidence tending to establish that application of New York law could effectively deprive him of a remedy. This failure is not surprising given the fact that Manchester chose to bring these same breach of contract claims in federal district court in New York prior to its bankruptcy filing. Obviously, the original owner of these claims thought that an adequate remedy could be achieved in a New York court applying New York law.

As for the fourth factor – *i.e.*, enforcement of the forum selection clause would contravene a strong public policy of the forum in which the Litigation Trustee has brought suit, this Court is satisfied, under the circumstances present here, that enforcement of the clause does not contravene any strong public policy, including the goal of centralizing litigation involving a debtor in the bankruptcy court where its bankruptcy case is pending. As noted previously, the Case was essentially concluded through substantial consummation of the Confirmed Plan months ago.

Because the Litigation Trustee failed to meet his burden under *M/S Bremen* of demonstrating that enforcement of the forum selection clause would be unreasonable, the Court must enforce the forum selection clause. The question then becomes how to give effect to it, to which we now turn.

2.    **Dismissal or Transfer**

While the Lyles sought either a dismissal of the Adversary Proceeding or its transfer to the

Southern District of New York, dismissal of the Adversary Proceeding accomplishes nothing. The Litigation Trustee would then be required to refile his claims against the Lyles, as those claims are an asset of the Litigation Trust that the Litigation Trustee believes has substantial value. There is no reason to require the Litigation Trustee to incur the costs associated with refiling.

Moreover, because the Lyles subjected themselves to the equitable jurisdiction of the bankruptcy court when they filed the Proofs of Claim, making even the Count I and II breach of contract claims "core" claims in accordance with 28 U.S.C. § 157(b)(2)(c), the Adversary Proceeding should be heard by a bankruptcy court. *See* Order Accepting Report and Recommendation of United States Bankruptcy Judge. This determination resolves the threshold inquiry faced by the bankruptcy court in *In re Lone Star Indus., Inc.*, 131 B.R. 269, 273 (Bankr. D. Del. 1991), where the court first had to decide "*whether any* bankruptcy court should hear [the adversary] proceeding before determin[ing] *which* bankruptcy court should hear it." (emphasis in original.) Due to the "core" nature of the claims, the "whether" inquiry has been answered. Accordingly, the Court must decide "which" bankruptcy court should hear the claims.

Given the validity of the forum selection clause agreed upon by the parties in the Purchase Agreements and the other circumstances just discussed, justice requires the transfer of the Adversary Proceeding to the United States Bankruptcy Court for the Southern District of New York.

### III. CONCLUSION

Because proper venue for the Adversary Proceeding lies in the United States Bankruptcy Court for the Southern District of New York, the Adversary Proceeding will be transferred there. The Clerk is directed to transfer the Adversary Proceeding to the United States Bankruptcy Court for the

Southern District of New York as expeditiously as possible.

**SO ORDERED.**

**### End of Memorandum Opinion and Order ###**